IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA LA GIGLIO, | |
| Plaintiff, | No. 19-cv-07565 |
| v. | Judge John F. Kness |
| ASSUREDPARTNERS OF ILLINOIS, LLC, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lisa La Giglio brings claims against her former employer, Defendant AssuredPartners of Illinois, LLC ("Assured Partners"), for hostile work environment sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Complaint ("Compl."), Dkt. 1 ¶ 1. Assured Partners has moved to dismiss La Giglio's complaint for its alleged failure to state a claim for which relief can be granted. Dkt. 10. As explained below, because La Giglio has alleged facts to state a claim that is "plausible on its face," the motion to dismiss is denied. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**I. BACKGROUND**

In reviewing Assured Partner's motion, the Court must accept as true La Giglio's pleaded facts and draw all reasonable inferences in her favor. *See Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008). Assured Partners is an insurance broker that provides both brokerage and consulting services to its clients. Compl. ¶ 7.

La Giglio worked as an account representative and manager at Assured Partners from May 2016 to September 2018. *Id.* ¶¶ 10-11. During her employment, La Giglio worked under the supervision of Vice President Michael Melnick and Chief Administrative and Human Resources Officer Karen Kozik. *Id.* ¶¶ 11, 14.

Melnick's cubicle was located near the offices of Melnick, Kozik, and President Anthony Pulgine, but on May 23, 2018, La Giglio's cubicle and Melnick's office were relocated to an "isolated" area of their floor. *Id.* ¶¶ 15-16. Between the time of the relocation and the end of June 2018, Melnick repeatedly touched La Giglio, including rubbing or trailing his fingers up and down her arm and massaging her shoulders. *Id.* ¶ 18. La Giglio describes this touching, which occurred up to nine times per day, as "unwelcome and offensive." *Id.* ¶ 19.

On June 22, 2018, La Giglio complained about Melnick's behavior to Pulgine. *Id.* ¶ 20. She reported to Pulgine that Melnick's repeated touching made her so upset that she began to experience headaches, stomach aches, shaking, and the sensation of feeling "frozen." *Id.* Shortly thereafter, La Giglio met with Kozik and Greg Crawford, Vice President of Human Capital Management. *Id.* ¶ 21. La Giglio reported to Kozik and Crawford that Melnick engaged in "incessant unwelcome and offensive touching" that made her "sick to her stomach" and caused her to feel "paralyzed." *Id.* Kozik and Crawford stated that Melnick's behavior was unacceptable and that they would address the issue. *Id.* ¶ 22.

On June 28, 2018, La Giglio met with Kozik and Melnick. *Id.* ¶ 24. Melnick admitted touching La Giglio and apologized. *Id.* Kozik informed La Giglio that Kozik

believed La Giglio's complaint of sexual harassment was merely a "communication issue" with Melnick, and that La Giglio would be required to attend additional weekly meetings with Kozik and Melnick to address the "communication issue." *Id.* ¶ 25.

After La Giglio's complaints, Melnick began to accuse her of poor job performance and started interfering with her work. *Id.* ¶¶ 26, 29. La Giglio also heard Melnick make negative comments about her to other employees and customers. *Id.* ¶ 34. Other employees and executives also began to criticize La Giglio and interfere with her work. *Id.* ¶ 28. On September 13, 2018, Kozik told La Giglio that it was obvious that the "communication issue" between La Giglio and Melnick could not be rectified, and that La Giglio's accounts would be assigned to other employees. *Id.* ¶ 31. La Giglio complained to Crawford that she believed she was being targeted for reporting Melnik's behavior and that Kozik did not adequately address the issues. *Id.* ¶ 33.

Because of the physical and emotional toll of the ongoing stress in her work environment, La Giglio submitted a letter of resignation on October 4, 2018. *Id.* ¶ 35. At the time of her resignation, La Giglio had already accepted a job offer elsewhere. *Id.* ¶ 37. La Giglio later learned that her prospective employer had called Assured Partners for a reference on September 28, 2018. *Id.* ¶ 40. Sometime after that call, however, the prospective employer withdrew the offer. Following the loss of her job offer, La Giglio told Kozik that she would like to rescind her resignation. *Id.* ¶ 37.

On October 11, 2018, La Giglio met with Kozik and Pulgine. *Id.* ¶ 38. Pulgine denied La Giglio's request. Pulgine told La Giglio that her issues with Melnick would

"never end," that the only way to make the situation go away was if "one of the parties is no longer in the equation," and that La Giglio's "drama" was not welcome in the office. *Id.* ¶¶ 38-39. Pulgine gave La Giglio thirty days to find new employment. *Id.* ¶ 41. On November 12, 2018, at the expiration of thirty days, Assured Partners terminated La Giglio. *Id.* ¶ 42.

La Giglio brought suit on November 15, 2019, and alleged hostile work environment sexual harassment in violation of Title VII (Count I) and retaliation (Count II). Assured Partners now moves to dismiss both claims. Dkt. 10.

## II. LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (2007) (internal punctuation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although legal conclusions are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 678-79, the Court, in evaluating a motion to dismiss, must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

### III. ANALYSIS

#### A. Hostile Work Environment Sexual Harassment

In Count I, La Giglio alleges that Assured Partners discriminated against her on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e-2(a)(1). Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Id*.

La Giglio claims that Assured Partners violated Title VII by subjecting her to a hostile work environment based on sexual harassment. Sexual harassment that is so "'severe or pervasive' as to 'alter the conditions of the victim's employment and creates an abusive working environment' violates Title VII." *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998) (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 786 (1998)). To state a claim for hostile work environment sexual harassment, a plaintiff must allege "1) she was subjected to

5

unwelcome harassment; 2) the harassment was based on her sex; 3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere; and 4) there is a basis for employer liability." *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007).

### 1. *Harassment Based on Sex*

Assured Partners contends the Complaint is "devoid of any facts linking Melnick's conduct to [La Giglio's] gender" and thus does not properly allege that the harassment was "based on her sex," the second element of a claim for hostile work environment sexual harassment. Dkt. 11 at 7. On the contrary, the Complaint contains allegations describing Melnick's conduct (including numerous instances of running his finger up and down La Giglio's arm) as "*sexual* harassment." *See, e.g.*, Compl. ¶¶ 1, 4, 20-21, 25-28 (emphasis added). La Giglio also alleges that "*[b]ecause of her sex*, Plaintiff was subjected to a hostile work environment." *Id.* ¶ 46 (emphasis added). Given La Giglio's characterization of her claim as one for *sexual* harassment, the Court can draw the reasonable inference from the facts alleged that Melnick's unwelcome and harassing conduct was based on sex. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations"); *Iqbal*, 556 U.S. at 662 ("[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense.").

6

### *2.  Hostile Work Environment*

Assured Partners next argues that La Giglio fails to meet the third element of a claim for hostile work environment sexual harassment because she has not alleged facts showing that Melnick's conduct was "severe or pervasive enough to create a hostile work environment." Dkt. 11 at 4. When determining whether a work environment is hostile, a court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

La Giglio has sufficiently alleged conduct that is sufficiently severe or pervasive to create a hostile work environment. La Giglio alleges "constant" uninvited physical contact, including as many as nine separate instances of touching in a single day, where Melnick rubbed or trailed his finger along her arm and rubbed her shoulders. Compl. ¶ 20. Although it is impossible to determine the context and exact nature of the allegedly offensive touching from the Complaint alone, La Giglio has met her burden of "rais[ing] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

At a later stage of the litigation—when the parties have developed a record of *facts* (not just allegations)—it may become plain that Melnick's conduct did not create a hostile environment and was, therefore, not actionable. On the other hand, the facts may show that that his conduct *was* of the type that Title VII prohibits. Discovery

7

may show that Melnick did not engage in similar conduct with men or was otherwise motivated to act "because of" La Giglio's sex, *see Smith*, 189 F.3d at 534 (noting the "[Supreme] Court's admonition in *Oncale* that the only requirement is that the adverse action must be because of the victim's sex"), or it may show that Melnick's conduct, taken as a whole, was sufficiently severe "in light of the [current] social mores of American workers and workplace culture" as to support liability under Title VII. *Id*. at 534-35. Put more succinctly, La Giglio's allegations—which describe repeated and unwanted touching and physical closeness—are, when viewed in the light of contemporary standards, sufficient to survive a motion to dismiss. *See id*.

To repeat, a fuller factual record may show that La Giglio's allegations are unsupportable. But a motion to dismiss merely tests the sufficiency of the complaint, not whether a plaintiff will ultimately prevail. At this juncture, La Giglio has met her burden of plausibly alleging conduct that is sufficiently "severe or pervasive" to create a hostile or abusive work environment. *See Aguilera v. Matty's W. Family Rest., Inc.*, 11-cv-02948, 2011 WL 4442826, at *3 (N.D. Ill. Sept. 20, 2011) (denying motion to dismiss and holding that "[the plaintiff's] allegations, because they involve inappropriate touching, rise to the level of harassment that is sufficiently severe or pervasive to state a claim for hostile work environment") (internal quotations omitted); *Cotton v. S. Suburban Hosp.*, 02-cv-06000, 2002 WL 31572116, at *2 (N.D. Ill. Nov. 19, 2002) (denying motion to dismiss hostile work environment sexual harassment claim where plaintiff alleged only one incident of non-physical harassment).

8

### *3.      Basis for Employer Liability*

Finally, Assured Partners argues that there is no basis for employer liability—the fourth element of a claim for hostile work environment sexual harassment—because it took prompt corrective action when it learned of La Giglio's complaints. Dkt. 11 at 7-8. An employer is liable under Title VII if, once apprised of the sexual harassment, it fails to take appropriate remedial measures. *Smith v. Sheahan*, 189 F.3d 529, 535 (7th Cir. 1999).

La Giglio alleges that she reported the harassment to Pulgine on June 22, 2018 and met with Crawford and Kozik on June 25, 2018 regarding her complaint. Compl. ¶¶ 20-21. She further alleges that she "was never removed from direct contact with her harasser" and that "her workstation remained outside Mr. Melnick's office." *Id.* ¶ 34. To make matters worse, Kozik required La Giglio to have weekly face-to-face meetings with her harasser. *Id.* ¶ 25. Even though Kozik told La Giglio in September 2018 that her workstation would be relocated to the Small Business area, she was never moved. *Id.* ¶¶ 32, 34.

La Giglio has alleged facts sufficient to allow an inference that Assured Partners did not take adequate steps to dissipate the hostile environment. La Giglio was required to work in close proximity to Melnick for more than three months after she reported his behavior. This failure to relocate La Giglio after she notified Assured Partners of Melnick's harassment plausibly creates a basis for employer liability. *See Mainor v. Chicago Transit Auth.*, 03-cv-09102, 2005 WL 3050604, at *8 (N.D. Ill. Nov. 15, 2005) (finding basis for employer liability where employer "negligently failed to

9

adequately remedy the harassment when it ignored [the plaintiff's] requests for transfer and kept her at the same work site as [the harasser] in spite of its notice of the harassment that had already occurred").

That the harassment happened to stop after La Giglio made her complaint is not necessarily an indication that Assured Partners took adequate steps to remedy the situation. *See Smith*, 189 F.3d at 535 ("Just as an employer may escape liability even if harassment recurs despite its best efforts, so it can also be liable if the harassment fortuitously stops, but a jury deems its response to have fallen below the level of due care. What is reasonable depends on the gravity of the harassment") (alteration accepted) (citation and internal quotation omitted). As the Seventh Circuit held when analyzing an issue of employer liability, what turns incidents of sexual misconduct "by a coworker (which do not violate Title VII) into sex *discrimination* by the *employer* (which does) [i]s the management's response[.]" *Shafer v. Kal Kan Foods, Inc.*, 417 F.3d 663, 666 (7th Cir. 2005) (citing *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798 (7th Cir. 2000)).

In *Shafer*, the Seventh Circuit, construing its earlier decision in *Hostetler*, explained that the defendant employer, instead of "firing or disciplining" the offending coworker, decided to "separate the pair by moving [the plaintiff] to a distant and less desirable [workplace]. In other words, the firm forced the female victim to bear the costs of 'solving' the problem. That was express and intentional discrimination." *Id*. at 666-67.

*Shafer*'s reasoning is instructive here. It is true that a more developed record

may show that the steps Assured Partners took to remedy the alleged harassment of La Giglio were appropriate and adequate given the circumstances. But in view of La Giglio's allegations, that conclusion cannot be reached in contravention of her well-pleaded facts, including that she was forced to continue working in close proximity with Melnick, that her work evaluations and relations with coworkers suffered, that Pugline told her "[t]he only way it goes away is if one of the parties is no longer in the equation," and that she ultimately was fired. Compl. ¶¶ 26, 28-29, 34, 38, 42. These alleged facts all suggest, at least at this early stage, that Assured Partners "forced [La Giglio] to bear the costs of 'solving' the problem." *See Shafer*, 417 F.3d at 667.

A district court cannot dismiss a complaint for failure to state a claim if, taking the facts pled as true, the plaintiff has "nudged [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. La Giglio has done just that concerning the alleged liability of Assured Partners.

\*          \*          \*

La Giglio has properly alleged the elements of a claim for hostile work environment sexual harassment. Because she has raised more than a speculative possibility of a right to relief, La Giglio has stated a claim on which relief can be granted as to Count I. Accordingly, the motion to dismiss the claim of hostile work environment sexual harassment is denied.

### B.     Retaliation

La Giglio alleges in Count II that Assured Partners retaliated against her for

reporting sexual harassment. Compl. ¶¶ 53-54. Title VII prohibits an employer from discriminating against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3. "To state a claim for retaliation under Title VII, a plaintiff must allege that "[s]he engaged in statutorily protected activity and suffered an adverse action as a result of that activity." *Alamo v. Bliss*, 864 F.3d 541, 555 (7th Cir. 2017) (internal quotations omitted).

### 1. Protected Activity

First, Assured Partners argues that La Giglio has failed to state a claim for retaliation because she does not allege that she engaged in a protected activity. As the Seventh Circuit has recognized, internal reporting of sexual harassment is a statutorily protected activity under Title VII. *See Rizzo v. Sheahan*, 266 F.3d 705, 715 (7th Cir. 2001) (plaintiff engaged in activity protected by statute when she filed an internal sexual harassment complaint). Assured Partners argues, however, that La Giglio's internal complaint "failed to include any indication that the alleged harassment was based on her sex" and thus was not a statutorily protected activity. Dkt. 11 at 9.

As explained above, La Giglio has, at this early stage, alleged facts sufficient to allow the reasonable inference that Melnick harassed La Giglio on account of her sex. There certainly could be a non-sex-based explanation for Melnick's conduct; but by the same token, the trailing of fingers up and down La Giglio's arm, the shoulder rubbing, and the invasion of personal space that La Giglio described in her internal

12

complaint (Compl. ¶¶ 18, 20) might also be explained as harassment based on sex—as courts have found previously with the benefit of a developed record. *See, e.g.*, *Gentry v. Exp. Packaging Co.*, 238 F.3d 842, 850 (7th Cir. 2001) (frequent touching is a "strong indicator" of a hostile work environment). Because the internal complaint included facts that described the nature of the harassment, La Giglio's complaint of sexual harassment was a statutorily protected activity under Title VII.

### 2. *Adverse Employment Action*

Next, Assured Partners argues that La Giglio has failed to state a claim for retaliation because she has not alleged that she suffered an adverse employment action as a result of lodging her sexual harassment complaint. Dkt. 11 at 10. The Seventh Circuit has adopted a broad definition of the phrase "adverse employment action." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). An adverse employment action must be "more than a mere inconvenience or an alteration of job responsibilities," and may include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* at 465-66.

La Giglio alleges that she suffered numerous adverse consequences for lodging her harassment complaint, including, among other things, accusations of poor performance, heightened scrutiny of her work, removal of job responsibilities, and, finally, termination. Compl. ¶¶ 54-55. It is unnecessary to examine in detail the sufficiency of the allegations related to each one of these retaliatory actions, as the

13

Complaint alleges facts allowing the plausible inference that, as a result of La Giglio's complaints, Assured Partners both terminated La Giglio's employment and interfered with her job prospects—both undeniably adverse employment actions.

Plaintiff alleges she submitted her resignation on October 4, 2018, to be effective on October 12, 2018. Compl. ¶ 35. On October 10, 2018—before she left the employ of Assured Partners—she rescinded her resignation. *Id.* ¶ 37. Pulgine, however, refused to accept the rescission. He stated that La Giglio's problems with Melnick would "never end" and that the only way to solve the issues between La Giglio and Melnick would be "if one of the parties is no longer in the equation." *Id.* ¶ 38. Pulgine then told La Giglio she could work for Assured Partners for another thirty days. *Id.* ¶ 41. La Giglio alleges that, at the end of the thirty day period, her employment was terminated. *Id.* ¶ 42.

Termination, by definition, is a materially adverse employment action. La Giglio's alleged termination thirty days after she attempted to rescind her resignation and Pulgine's suggested desire to have her removed from "the equation" easily support an inference of causal connection and retaliatory motive. Assured Partners cites *Wilkerson v. Springfield Pub. Sch. Dist. No. 186*, 40 F. App'x 260 (7th Cir. 2002) (nonprecedential disposition) for the proposition that a refusal to accept a rescission of a resignation cannot be considered an effective termination. Dkt. 11 at 11-12. In *Wilkerson*, however, the plaintiff had already "turned in his keys, and stopped working" when he attempted to rescind his resignation. *Wilkerson*, 40 F. App'x at 263. The plaintiff in that case had thus already effectively resigned when he attempted to

14

rescind his resignation. La Giglio, however, has alleged facts to support her contention that her resignation never became effective.

La Giglio also alleges that Assured Partners interfered with her prospective employment during a reference phone call made to Assured Partners on September 28, 2018. Compl. ¶ 40. The inference to be drawn is that someone at Assured Partners said something negative about La Giglio during that phone call that led the new employer to withdraw the job offer. Though La Giglio's allegations related to the September 28, 2018 phone call are thin, she receives, at this stage, the "benefit of imagination, so long as the hypotheses are consistent with the complaint." *Bausch v. Stryker Corp.*, 630 F.3d 546, 559 (7th Cir. 2010). Considering the timing of the phone call, the allegation that the prospective employer withdrew its offer, and the allegations that various employees and executives unfairly criticized La Giglio's work after she made her harassment complaint, it is not too great a leap to infer that someone made a retaliatory comment on the September 28, 2018 call that caused La Giglio to lose her job offer. At this juncture, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Because La Giglio has presented a "story that holds together," the motion to dismiss is denied as to Count II.

## IV. CONCLUSION

For the reasons provided above, the motion to dismiss of Assured Partners is denied.

SO ORDERED.

Date: July 2, 2020

JOHN F. KNESS
United States District Judge